[Cite as *Warren Cty. Aud. v. Harpur*, 2016-Ohio-7547.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

WARREN COUNTY AUDITOR,              :

    Plaintiff-Appellee,              :              CASE NO.   CA2016-01-003

                                :              O P I N I O N
  - vs -              10/31/2016

                                  :

JENNIFER A. HARPUR, et al.,              :

    Defendants-Appellants.              :

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 15 CV 86794

David P. Fornshell, Warren County Prosecuting Attorney, Kathryn M. Horvath, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee, Warren County Auditor

Jennifer A. Harpur, 1693 Oxford Trenton Road, Oxford, Ohio 45056, defendant-appellant, pro se

**PIPER, P.J.**

{¶ 1}   Defendant-appellant, Jennifer Harpur, appeals a decision of the Warren County Court of Common Pleas denying her unemployment benefits.

{¶ 2}   Harpur was employed as an ongoing caseworker with the county's children services agency.  One of the children with whom Harpur worked turned 18 years old while he was in the agency's temporary custody.  While still in temporary custody, but after the youth had decided to return to his biological mother, the youth called Harpur because he no longer

wanted to be with his mother. Harpur asked her supervisor if she could take the youth home with her as a temporary placement. Harpur's supervisor told her no, but permitted Harpur to check on the youth, suggesting that Harpur perform the visit with support from the police department. When Harpur arrived to check on the youth, he jumped in her car and threatened to harm himself if he was forced to stay with his mother. Harpur, who had not contacted police for support, took the youth to her home, where he spent the night.

{¶ 3} Harpur was placed on administrative leave for committing insubordination, and her supervisors informed her that there would be a predisciplinary hearing. Harpur felt that her discharge was inevitable, and thus entered into an agreement with the county by which she voluntarily resigned. Harpur then filed for unemployment benefits, asserting that her resignation was with just cause.

{¶ 4} Harpur's request for unemployment was initially denied, but a review officer determined that Harpur's resignation was based on just cause. The Warren County Auditor appealed the decision to the common pleas court. A magistrate held a hearing, and reversed the decision of the review officer, reinstating the initial denial of Harpur's unemployment benefit request. Harpur filed objections to the magistrate's decision, which were overruled by the common pleas court. Harpur now appeals, pro se, the common pleas court's decision, raising the following assignments of error. For ease of discussion, we will address Harpur's assignments of error together.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE COURT ERRED IN MAKING APPARENT BIASED CONCLUSIONS BY GIVING UNDUE WEIGHT AND CONSIDERATION TO APPELLEE TESTIMONY.

{¶ 7} Assignment of Error No. 2:

{¶ 8} THE COURT ERRED IN ALLOWING AND CONSIDERING TESTIMONY FROM APPELLEE THAT CAUSED UNFAIR PREJUDICE TOWARDS THE APPELLANT.

{¶ 9}   Assignment of Error No. 3:

{¶ 10}   THE COURT ERRED IN MISINTERPRETING THE RECORD OF THE FACTUAL EVENTS REGARDING THE HEARING OFFICER'S RECEIPT OF THE LETTER FROM [A SUPERVISOR] SUBMITTED TO THE COURT AFTER THE REVIEW COMMISSION HEARING.

{¶ 11}   In her three assignments of error, Harpur essentially argues that the common pleas court erred by reversing the review officer's determination that she was entitled to unemployment benefits.

{¶ 12}   The legislative purpose underlying the Unemployment Compensation Act is to provide financial assistance to individuals who are involuntarily unemployed through no fault or agreement of their own.  *Tzangas, Plakas & Mannos v. Ohio Bur. Of Emp. Serv.*, 73 Ohio St.3d 694, 697 (1995).  As such, R.C. 4141.29(D)(2)(a) provides that an individual is not entitled to benefits if he or she "quit work without just cause or has been discharged for just cause in connection with the individual's work."  "When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament.  Fault on the employee's part separates him from the Act's intent and the Act's protection."  *Tazangas* at 697-698.  Hence, just cause, under the Unemployment Compensation Act, is predicated upon employee fault.  *Id.* at 698.

{¶ 13}   According to R.C. 4141.282(H), an administrative board's determination may be reversed by the common pleas court or appellate court if the board's determination is unlawful, unreasonable, or against the manifest weight of the evidence.  "While appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record."  *Tzangas* at 696.  The focus of an appellate court when reviewing an unemployment compensation appeal is upon the commission's decision, not the common

- 3 -

pleas court's decision. *Shepherd Color Co. v. Dir., Ohio Dept. of Job & Family Servs.*, 12th Dist. Butler No. CA2012-11-244, 2013-Ohio-2393, ¶ 19.

{¶ 14} After the initial denial of unemployment benefits, Harpur appealed the decision, and a review officer held a hearing. During the hearing, Harpur's supervisor testified that Harpur was placed on administrative leave for insubordination because Harpur had failed to follow a directive given to her that she not take the youth home with her. Harpur's supervisor testified that Harpur and the youth had maintained contact after he turned 18 years old and decided to return to his biological mother. According to the supervisor's testimony, the youth had been sending concerning text messages to Harpur after his mother had been stopped by police that day while trying to buy heroin. Harpur then contacted her supervisor, and asked that she be permitted to take the youth to her home for his safety. The supervisor testified that she did not consent to Harpur taking the youth home, and that she eventually agreed only to allow Harpur to check on the youth's safety. According to the supervisor's testimony, Harpur "did not contact law enforcement and went and picked him up and did take the child back to her house to stay the night," which was in direct conflict with the supervisor's directive.

{¶ 15} Harpur's supervisor testified that Harpur informed her that she did not have time to call law enforcement for support, and that the youth was already waiting outside his home once Harpur arrived. Harpur and her supervisor continued to exchange text messages, as well as phone calls, after the youth entered Harpur's car. During this time, the supervisor informed Harpur that she was unauthorized to take the youth home and needed to secure placement and mental health consultations to ensure the youth's safety. Harpur's supervisor testified that during her conversations with Harpur, Harpur acknowledged that her job may be in jeopardy, but that she had nonetheless decided to take the youth home against her supervisor's directive.

{¶ 16}  A personnel officer with the Warren County Auditor's Office also testified during the hearing.  The personnel officer testified that Harpur signed a resignation notice before the disciplinary hearing occurred.  According to the personnel officer, the purpose of the disciplinary hearing was to determine whether Harpur would be terminated, and that the decision depended "on what the hearing officer would say."  The personnel officer testified that she spoke with Harpur prior to the disciplinary hearing, and negotiated resignation terms including benefits and a pay-out.  The hearing officer asked the personnel officer directly whether Harpur would have been terminated if, during the disciplinary hearing, Harper was shown to be insubordinate and the personnel officer testified, "yes we would've pursued termination."

{¶ 17}  Harpur testified at the hearing, and did not deny taking the youth home with her on the night in question.  However, Harpur testified that her decision to take the youth to her home was made out of a concern for the youth's safety and as a means to allow her to reflect on the situation before making other arrangements.  Harpur also acknowledged that she informed her supervisor that if she needed to quit her job in order to be considered a proper placement for the youth, that she would quit.  Harpur also explained that she agreed to resign, rather than participate in the disciplinary hearing, because she was told that the disciplinary hearing would be a matter of public record, and that such record could be used against her in her attempt to become a licensed foster parent.

{¶ 18}  Harpur acknowledged that she was never told that she would definitely be discharged if she did not resign.  Instead, she testified that she made the decision to resign to avoid a "perhaps ugly separation or termination" from the agency, to avoid any disciplinary hearing records being made public, and because resigning with health benefits and two-months' pay was the "best possible decision" for her and her family.

{¶ 19}  After reviewing this evidence, the hearing officer's determination that Harpur

resigned with just cause is against the manifest weight of the evidence. While the reason for Harpur's insubordination may have been noble and intended to protect a young person, the record is clear that Harpur was directly told not to take the youth home with her that night, and that other placement options must be pursued. Instead of heeding this directive, Harpur took the youth home. Moreover, Harpur acknowledged that she understood her actions may result in her termination, and that such termination was acceptable if it was necessary to procure the youth's placement in her home.

{¶ 20} Despite the fact that Harpur does not deny her insubordination, Harpur claims that she was prejudiced by the common pleas court hearing the county auditor's appeal. First, Harpur claims that the common pleas court was biased against her because the county auditor is represented by the Warren County Prosecutor and that the common pleas court shared "common interests" with the prosecutor. However, rather than state in what ways she felt prejudiced by the common pleas court, Harpur only asserts that "it is reasonable to assume that the Appellees and Trial Court have common interests." Such an assumption, however, is misplaced.

{¶ 21} According to R.C. 4141.282, the proper method of appealing a decision of the unemployment compensation review commission is to appeal that decision to the court of common pleas, and more specifically, the common pleas court of the county in which the employer has its principal place of business. As such, and according to the controlling statute, the county auditor was required to appeal the decision to the Warren County Court of Common Pleas. Moreover, there is no indication in the record, and Harpur has not pointed to any, that the common pleas court acted in a biased manner against her.

{¶ 22} Harpur also argues that the common pleas court erred in considering a letter written after the review officer held a hearing. The letter in question was written by Harpur's supervisor, and was meant to clarify the testimony the supervisor gave at the hearing. Within

the letter, Harpur's supervisor makes reference to her belief that something Harpur testified to during the hearing was not "credible."

{¶ 23} On the day Harpur took the youth home, the supervisor told Harpur to have the police assist during the wellness check, and Harpur agreed to call the police to help her. However, Harpur later informed her supervisor in a text message that she had the youth in her car and "didn't have time to call pd." During Harpur's testimony, she indicated that when she arrived at the youth's home, the police were already there and that she did not want to send the youth with police because he was terrified by his encounter with police earlier in the day when his mother was stopped by police while she was trying to buy heroin. The supervisor stated in her letter, "I was never informed that law enforcement was on scene and this is a newly surfaced detail which I do not believe to be credible." Harpur asserts that this statement, and the letter in general, was prejudicial to her because it made the common pleas court believe that she was not credible.[1]

{¶ 24} However, the record is clear that the letter did not have a prejudicial impact on Harpur during the common pleas court's review. While the common pleas court made reference to the letter, the portions referenced were specific to text messages exchanged by Harpur and her supervisor on the night Harpur took the youth home. However, these text messages were made a part of the record before the letter, and the common pleas court's reference to the text messages was not inconsistent with the testimony given by both Harpur and her supervisor at the hearing.

{¶ 25} The record is equally clear that the common pleas court did not find the contents of the letter determinative when analyzing whether Harpur resigned with just cause.

---

1. While Harpur does not specifically challenge the ability of the common pleas court to consider the letter, we note that such consideration was valid, as this court has specifically held that a party is permitted to supplement the record with additional evidence after a hearing has been held by the hearing officer, and after or at the time a request for review is filed. *Shepherd Color Co. v. Dir., Ohio Dept. of Job & Family Servs.*, 12th Dist. Butler No. CA2012-11-244, 2013-Ohio-2393, ¶ 28.

Instead, the common pleas court relied on other evidence in the case, and found that Harpur's undisputed insubordination resulted in Harpur resigning without just cause. As such, there is no indication in the record that the letter's contents, or the supervisor's challenge to Harpur's credibility, was prejudicial to Harpur.

{¶ 26} After fully reviewing the record, we find that the reviewing officer's determination that Harpur resigned with just cause was against the manifest weight of the evidence and, therefore, the common pleas court was correct in reversing the decision of the reviewing officer. As such, Harpur's three assignments of error are overruled.

{¶ 27} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.